**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC | § § § § | |
| Plaintiff, | § § | Civil Action No. 2:16-cv-00385-RWS |
| v. | § § § | |
| AT&T SERVICES, INC. | § § § | |
| Defendant. | § § § | |

**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF THE ISSUE.................................................................. 2

III.    BACKGROUND ....................................................................................... 2

        A.   Plaintiff's Complaint ..................................................................... 2

        B.   The '221 Patent ............................................................................. 3

IV.     LEGAL STANDARDS ............................................................................. 6

V.      ARGUMENT ............................................................................................ 7

        A.   The Standard for Determining Patent-Eligible Subject Matter.............................. 7

        B.   This Court Need Not Construe the Claims Before Finding Them Invalid ............. 8

        C.   The '221 Patent Is Not Directed To Patent-Eligible Subject Matter...................... 9

             1.   The '221 Patent Claims The Abstract Idea Of Media Storage And
                  Delivery..............................................................................10

             2.   The '221 Claims Supply No Inventive Step That Would Transform
                  Them into Patent-Eligible Subject Matter....................................15

             3.   *Enfish* Confirms That The '221 Patent Claims Are Not Patent-
                  Eligible..............................................................................18

VI.     CONCLUSION........................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l,*
134 S. Ct. 2347 (2014) ................................................................................... *passim*

*Am. Well Corp. v. Teladoc, Inc.,*
No. 15-cv-12274-IT, 2016 WL 3255011 (D. Mass. June 13, 2016)........................................20

*Apollo Finance, LLC v. Cisco Sys., Inc.,*
No. 2:15-CV-9696, 2016 WL 3234518 (C.D. Cal. June 7, 2016)...........................................20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................................6

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,*
133 S. Ct. 2107 (2013)............................................................................................7

*Bancorp Servs. LLC v. Sun Life Assurance Co. of Can.,*
687 F.3d 1266 (Fed. Cir. 2012)..................................................................................8

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014)........................................................................... 16-17

*Clear with Computers, LLC v. Altec Indus., Inc.,*
No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ...................................................9

*Clear with Computers LLC v. Dick's Sporting Goods, Inc.,*
21 F. Supp. 3d 758, (E.D. Tex. 2014).................................................................... *passim*

*Content Extraction & Transmission LLC v. Wells Fargo Bank,*
776 F.3d 1343 (Fed. Cir. 2014)............................................................... 6, 8-9, 16

*Cuvillier v. Taylor,*
503 F.3d 397 (5th Cir. 2007) ...............................................................................6

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
558 Fed. App'x 988 (Fed. Cir. 2014).................................................................16

*CyberSource Corp. v. Retail Decisions, Inc.,*
654 F.3d 1366 (Fed. Cir. 2011)..........................................................................16

*Datatrak Int'l, Inc. v. Medidata Solutions, Inc.,*
No. 1:11-cv-458 (N.D Ohio, Nov. 6, 2015)...........................................................18

*DDR Holdings, LLC v. Hotels.com LP*,
    773 F.3d 1245 (Fed. Cir. 2014)...................................................................... 17-18

*Device Enhancement LLC v. Amazon.com, Inc.*,
    No. 15-762-SLR, 2016 WL 2899246 (D. Del. May 17, 2016)................................20

*eDekka LLC v. 3Balls.com, Inc.*,
    No. 2:15-cv-541 (E.D. Tex. Sept. 21, 2015) .........................................................9

*Enfish, LLC v. Microsoft Corp.*,
    No. 2015-1244, 2016 WL 2756255 (Fed. Cir. May 12, 2016) .................................. 10, 18- 20

*GoDaddy.com LLC v. RPost Commc'ns Ltd.*,
    No. 14-CV-126-PHX-JAT, 2016 WL 3165536 (D. Ariz. June 7, 2016)................................20

*I/P Engine, Inc., v. AOL Inc.*,
    576 Fed. App'x 982 (Fed. Cir. 2014) (Mayer, J., concurring)...................................8

*JDS Techs., Inc. v. Exacq Techs.*,
    No. 15-10387, 2016 WL 3165724 (E.D. Mich. June 7, 2016) .................................20

*Lovelace v. Software Spectrum, Inc.*,
    78 F.3d 1015 (5th Cir. 1996) .............................................................................6

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 829 (E.D. Tex. 2014) ...................................................................9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ........................................................................................7

*NextPoint, Inc. v. Hewlett-Packard Co.*,
    No. 15-cv-8550, 2016 WL 3181709 (N.D. Ill. June 8, 2016)................................20

*NexusCard, Inc. v. The Kroger Co.*,
    No. 2-15-cv-968 (E.D. Tex. Mar. 24, 2016) .........................................................9

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008).............................................................................9

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015).........................................................................6, 8

*OpenTV, Inc v. Apple, Inc.*,
    No. 14-cv-1622, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015)................................14

*Orostream LLC v. ABS-CBN Int'l*,
    No. 2:15-cv-248 (E.D. Tex. Oct. 1, 2015) .............................................................9

*Pabst Licensing GmbH & Co. KG v. Xilinx Inc..*,
    No. 16-CV-925-LHK, 2016 WL 3196657 (N.D. Cal. June 9, 2016) ....................................20

*Preservation Wellness Techs. LLC v. Allscripts Healthcare Solutions*,
    No. 2:15-cv-1559 (E.D. Tex. May 9, 2016)................................................................9

*Presqriber, LLC v. AO Capital Partners LLC d/b/a Prognosis Innovation
    Healthcare*,
    No. 6:14-CV-440 (E.D. Tex. Mar. 31, 2015) ...........................................................9

*Rothschild Location Techs. LLC v. Geotab USA, Inc., et al.*,
    No. 6:15-cv-682, 2016 WL 2847974 (E.D. Tex. May 16, 2016) ................................... *passim*

*Rothschild Location Techs. LLC v. Geotab USA, Inc., et al.*,
    No. 6:15-cv-682 (E.D. Tex. Jan. 4, 2016) (Report and Recommendation) ............................8

*In re TLI Commc'ns LLC Patent Litig.*,
    No. 2015-1372, 2016 WL 2865693 (Fed. Cir. May 17, 2016) ................................... 15-16, 20

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)........................................................................ *passim*

*Visual Memory LLC v. Nvidia Corp.*,
    No. 15-789, 2016 WL 3041847 (D. Del. May 27, 2016) ........................................20

*Voxathon LLC v. Alpine Elecs. of Am., Inc.*,
    No. 2-15-cv-562 (E.D. Tex. Jan. 20, 2016) ...........................................................9

*Yodlee, Inc. v. Plaid Techs. Inc.*,
    No. 14-1445-LPS, 2016 WL 2982503 (D. Del. May 23, 2016) ................................20

## Statutes

35 U.S.C. § 101 ............................................................................. *passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(6)................................................................1, 6, 8

iv

# I.     INTRODUCTION

Defendant AT&T Services, Inc. ("AT&T") moves to dismiss this patent infringement action under Fed. R. Civ. P. 12(b)(6) because Plaintiff Rothschild Broadcast Distribution Systems, LLC ("Plaintiff") has failed to state a claim upon which relief can be granted. Specifically, the claims of Plaintiff's sole asserted patent, U.S. Patent No. 8,856,221 ("the '221 Patent"), are drawn to patent-ineligible subject matter—the abstract idea of storing and delivering media content—and invalid under 35 U.S.C. § 101.

As discussed in more detail below, the '221 Patent is drawn to the abstract idea of storing and delivering media content, and there is no inventive concept that saves any of the patent claims.  The '221 Patent, entitled "System and Method for Storing Broadcast Content in a Cloud-Based Computing Environment," very generally describes a system and method by which a system receives a request for media content (for example, a video), verifies that the request came from a registered consumer device, determines whether the video is available, and, if so, delivers it to the requestor.   This rote inventory storage, retrieval, and delivery procedure describes nothing beyond an abstract idea and could be performed by, for example, any video rental store employee who, at a customer's request, checks whether a particular video is in stock and, if so, provides it to the customer.   This is an everyday process of the retail world, applicable to any business that sells some kind of good, whether tangible or digital.

Moreover, the '221 Patent's general description of computerizing this everyday process falls far short of adding an inventive concept that would set any meaningful bounds on the patent's purported monopoly of the abstract idea.  The claims of the '221 Patent are very general. They are not directed at any specific computer hardware, nor the implementation of any specific computer algorithms on such hardware.  Although the '221 Patent identifies alleged technical

problems regarding the authentication of consumer devices, the verification of media content availability and insufficiency of computing resources, the patent provides no inventive technical solutions to solve these so-called technical problems.  Instead, the '221 Patent claims nothing more than a general media inventory storage and retrieval system and associated method of operating that system using general purpose computing equipment.  Further, the claims of '221 Patent are drafted at a level of generality that will not require formal claim construction for the Court to conduct the necessary analysis prior to deciding this motion.

## II.      STATEMENT OF THE ISSUE

Whether the '221 Patent claims—directed to systems and methods for storing and delivering media content—are directed to an abstract idea and, therefore, are not patent-eligible under Section 101 of the Patent Act, 35 U.S.C. § 101.

## III.     BACKGROUND

### A.       Plaintiff's Complaint

On April 8, 2016, Plaintiff filed its complaint for patent infringement against AT&T.[1] Separately, Plaintiff filed five similar suits in this Court, asserting the same patent.[2]  All cases have been assigned to Judge Schroeder.  No case management order has issued in any of the cases.  Plaintiff claims to own or have the right to enforce the '221 Patent.  Compl., Dkt. No. 1, ¶ 10.  Plaintiff asserts that the claims of the '221 Patent relate to a "media content storage and delivery systems and services."  *Id.* ¶ 13 (paraphrasing '221 Patent, preamble of claims 1 and 7).

---

[1] Plaintiff's original complaint named AT&T Mobility LLC as the defendant in this action.  On June 3, 2016, the Court granted the parties' Agreed Motion to Substitute Parties, which added AT&T Services, Inc. as the defendant and removed AT&T Mobility LLC.  (Dkt. No. 7).

[2] Plaintiff filed these cases against Barnes & Noble, Inc. et al (2:16-cv-402); Rhapsody International, Inc. (2:16-cv-403); Plex, Inc. (2:16-cv-404); Sony Electronics, Inc. et al. (2:16-cv-405); and Spotify USA, Inc. (2:16-cv-406).

Plaintiff further asserts that "AT&T's U-Verse systems" are "media content storage and delivery systems and services" that infringe "at least Claim 1 of the '221 Patent." *Id.* ¶ 14 (paraphrasing '221 Patent, preamble of claims 1 and 7).

### B.     The '221 Patent

The '221 Patent issued on October 7, 2014 and claims priority to a provisional application filed on August 29, 2011. Ex. 1, '221 Patent, 1:8-17.  In describing the "field of the invention" covered by the claims, the '221 Patent's specification states that the patent "relates to a method and system for on-demand storage and delivery of media content." *Id.* 1:26-27.  The "background" section of the '221 Patent states that "[t]he widespread growth of communication networks and internet enabled consumer devices allow consumers to stream on-demand videos and music." *Id.* 1:31-33.  The '221 Patent's specification alleges that the invention "advantageously provides a method and system for on-demand storage and delivery of media content." *See id.* 2:20-22.  The specification also identifies alleged problems in the prior art, namely, that broadcast servers may lack sufficient storage space, or that costs may not be tailored to each consumer based on the requested media conent or its individual needs.  *See id.* 1:31-2:16.

The '221 Patent contains 13 claims, including two independent claims (claims 1 and 7). Both independent claims are directed to the same general idea of, upon a consumer's request, checking to see whether a media content item is available, and both claims feature nearly identical limitations (as italicized).  Indeed, the principle difference between claim 1 and claim 7 is that claim 1 is drawn to a system, while claim 7 is drawn to a method (see next page):

| 1. A system for media content storage and delivery, the system comprising: | 7. A method for storing media content and delivering requested media content to a consumer device, the method comprising: |
|---|---|
| a first server, the first server including: | |
| a first receiver, the first receiver configured to *receive a request message including media data indicating requested media content and a consumer device identifier corresponding to a consumer device*; and | *receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device*; |
| a first processor in communication with the first receiver, the first processor configured to *determine whether the consumer device identifier corresponds to a registered consumer device*; | *determining whether the consumer device identifier corresponds to a registered consumer device*; and |
| if the first processor *determines that the consumer device identifier corresponds to the registered consumer device, then:* the first processor is further configured to *determine whether the request message is one of a storage request message and a content request message*; | if it is *determined that the consumer device identifier corresponds to the registered consumer device, then:* *determining, whether the request message is one of a storage request message and a content request message;* and |
| *if the request message is the storage request message, then* the processor is further configured to *determine whether the requested media content is available for storage;* and | *if the request message is the storage request message, then determining whether the requested media content is available for storage*; and |
| *if the request message is the content request message, then* the processor is further configured to *initiate delivery of the requested media content to the consumer device*; | *if the request message is the content request message, then initiating delivery of the requested media content to the consumer device;* |
| *wherein the media data includes time data that indicates a length of time to store the requested media content; and* | *wherein the media data includes time data that indicates a length of time to store the requested media content; and* |
| *the first processor is further configured to determine whether the requested media content exists; and* | *the first processor is further configured to determine whether the requested media content exists; and* |
| *if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device.* | *if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device.* |

The eleven dependent claims (claims 2-6, 8-13) add insubstantial limitations to the corresponding independent claims 1 and 7:

- Providing a message confirming that requested media content is available for storage (claims 2, 8);

- Providing a message prompting a user to register a consumer device (claim 3);

- Providing memory to store consumer user data including consumer device data (claims 4, 9, 10);

- Verifying that a consumer device identifier is associated with a particular consumer (claims 5, 11);

- Transmitting requested media content from one server to another after verifying that a consumer device identifier corresponds to a registered consumer device (claim 6); and

- Informing the consumer of the cost of the requested media content (claim 12) and doing the same where the cost does not vary based upon the number of times the content is delivered (claim 13).

The '221 Patent does not describe the invention of any new or specific computer software or hardware, nor does it describe an improvement in the operation of existing software or hardware or the implementation of specific computer algorithms on such hardware.  Instead, the claimed systems and methods operate with well-known computer components, each performing its usual function.

The '221 Patent provides no inventive technical solutions to solve technical problems. To the contrary, the purported invention can be put into practice using "[a]ny kind of computing system," and "[a] typical combination of hardware and software could be a specialized or general purpose computer system."  *Id*. 10:12-19.  A consumer device "may include wired or wireless devices such as mobile phones, personal digital assistant devices, personal computers, laptop computers, tablet computers, digital video recorders, televisions, digital versatile disc players, among other devices that may communicate via network."  *Id*. 3:56-60.  The processors may

5

include a "central processing unit (CPU) for executing computer program instructions stored in memory, as is well known in the art." *Id*. 3:65-67.  "Memory may include non-volatile and volatile memory." *Id*. 4:1-3.  Non-volatile memory "may include a hard drive, memory stick, flash memory and the like," and "volatile memory may include random access memory and others known in the art." *Id*. 3:3-5.  The various items of hardware communicate "via network using communication protocols known in the art, *e.g*., Internet Protocol." *Id*. 3:50-52.

## IV.   LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In deciding a Rule 12(b)(6) motion, courts may consider facts alleged in the complaint as well as documents attached to or incorporated into the complaint.  *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).  Although factual allegations are taken as true, this principle is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[W]hen patent claims on their face are plainly directed to an abstract idea, a court may properly assess patent-eligibility under § 101 at the pleading stage." *Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6:15-cv-682-RWS-JDL, 2016 WL 2847974, at *2 (E.D. Tex. May 16, 2016) ("*Geotab*") (citing, *e.g*., *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715–16 (Fed. Cir. 2014), *cert. denied sub nom. Ultramercial LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015)).

In deciding patentability, a court need not review all claims, but only those that are representative of the claimed invention as a whole.  *See Ultramercial*, 772 F.3d at 712 (reviewing only claim 1 as "representative" and noting that "the other claims of the patent are drawn to a similar process" and therefore "suffer from the same infirmity as claim 1 and need not be considered further").

## V.   ARGUMENT

### A.   The Standard For Determining Patent-Eligible Subject Matter

Section 101 of the Patent Act defines the subject matter eligible for patent protection: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.  The Supreme Court has recognized three exceptions:  "Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (internal quotation marks omitted).  These exceptions serve as basic tools for all scientific and technological work and that "monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012).

The Supreme Court has articulated a two-step framework for determining patentable subject matter.  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (invalidating patent covering abstract idea of computerized settlement intermediation).  *First*, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea.  *Id*.  *Second*, if the claims are so directed, the court must then consider "the elements of each claim both individually and 'as an ordered combination' to determine

whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Id*. (quoting *Mayo*, 132 S. Ct. at 1297-98).  This second step searches for an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Id*. (alteration in original) (quoting *Mayo*, 132 S. Ct. at 1294).

### B.      This Court Need Not Construe The Claims Before Finding Them Invalid

This motion is ripe for the Court's consideration because the '221 Patent claims are drafted at a level of generality that does not require formal claim construction for the Court to conduct the necessary analysis.  The Federal Circuit has repeatedly sanctioned this approach, stating "claim construction is not an inviolable prerequisite to a validity determination under § 101."  *Bancorp Servs. LLC v. Sun Life Assurance Co. of Can*., 687 F.3d 1266, 1273 (Fed. Cir. 2012) *and Content Extraction*, 776 F.3d at 1349; *see OIP Techs.*, 788 F.3d at 1364 (no need for construction where claim limitations are "well-understood, routine, conventional data-gathering activities"); *Ultramercial*, 772 F.3d at 715–16 ("The district court granted WildTangent's pre-answer motion to dismiss under Rule 12(b)(6) without formally construing the claims"); *see also id.* at 714-15 (examining patentability "[w]ithout purporting to construe the claims").  This is because "[p]atent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation."  *I/P Engine, Inc., v. AOL Inc.*, 576 Fed. App'x 982, 996 (Fed. Cir. 2014) (Mayer, J., concurring).

This Court also regularly dismisses patent cases for failing to claim eligible subject matter prior to any formal claim construction hearing.[3]  At this early stage, however, the Court

---

[3] *See, e.g.*, Report and Recommendation, *Rothschild Location Techs. LLC v. Geotab USA, Inc.*,

should construe any disputed patent claims in a manner most favorable to the non-moving party. *Content Extraction*, 776 F.3d at 1349; *Geotab R&R*, slip op. at 8. As described above, representative claims 1 and 7 recite general purpose computer components that are configured to perform each component's ordinary function. Unless Plaintiff manufactures some dispute here, this Court need not construe any claim term—the plain and ordinary meaning controls. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (requiring an actual dispute in claim scope before requiring claim construction). Indeed, no proffered construction by Plaintiff could save claims directed to the abstract idea of "media storage and delivery" implemented on general purpose computers.

## C.      The '221 Patent Is Not Directed To Patent-Eligible Subject Matter

The '221 Patent fails the Supreme Court's test because (1) the claims are directed to an abstract idea—storing and delivering media content; and (2) the claims do not contain any inventive concept that would otherwise prevent the claims' monopolization of this abstract idea.

---

*et al*., No. 6:15-cv-682-RWS-JDL, slip op. at 7-8 (E.D. Tex. Jan. 4, 2016) ("*Geotab R&R*") (adopted by *Geotab*, 2016 WL 2847974, at *3) (holding claims invalid before claim construction proceeding); *Clear with Computers, LLC v. Altec Indus., Inc*., No. 6:14-cv-79, 2015 WL 993392, at *3 (E.D. Tex. Mar. 3, 2015) ("[T]he particular facts of this case indicate that claim construction is unnecessary."); *see also Preservation Wellness Techs. LLC v. Allscripts Healthcare Solutions*, No. 2:15-cv-1559 (E.D. Tex. May 9, 2016); *NexusCard, Inc. v. The Kroger Co*., No. 2-15-cv-968 (E.D. Tex. Mar. 24, 2016); *Voxathon LLC v. Alpine Elecs. of Am., Inc*., No. 2-15-cv-562 (E.D. Tex. Jan. 20, 2016); *eDekka LLC v. 3Balls.com, Inc*., No. 2:15-cv-541 (E.D. Tex. Sept. 21, 2015); *Orostream LLC v. ABS-CBN Int'l*, No. 2:15-cv-248 (E.D. Tex. Oct. 1, 2015); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc*., 66 F. Supp. 3d 829, 838, 846-47 (E.D. Tex. 2014) (Bryson, J., sitting by designation) (holding claims invalid before claim construction proceeding). *But cf., e.g., Presqriber, LLC v. AO Capital Partners LLC d/b/a Prognosis Innovation Healthcare*, No. 6:14-CV-440, slip op. at 8-9 (E.D. Tex. Mar. 31, 2015) (denying, without prejudice, defendants' motion to dismiss where defendants agreed some terms were unclear).

1. **The '221 Patent Claims The Abstract Idea Of Media Storage And Delivery**

Although there is no hard-and-fast rule to know when a claim is directed to an abstract idea, the Supreme Court and the Federal Circuit find it sufficient to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, No. 2015-1244, 2016 WL 2756255, at *4 (Fed. Cir. May 12, 2016). "For instance, fundamental economic and conventional business practices are often found to be abstract ideas, even if performed on a computer." *Id.* (citing, *e.g.*, *OIP Techs*., 788 F.3d at 1362–63). The '221 Patent claims are directed to an abstract idea because "[t]here is no meaningful distinction between the concept[s]" of (1) using advertising as a commodity as in *Ultramercial*, (2) selling goods from inventory as in *Clear with Computers*, or (3) retrieving an address from another location found in *Geotab*, on the one hand, and the concept of storing and delivering media content, on the other. *See Alice Corp.*, 134 S.Ct. at 2357.

*Ultramercial, Inc. v. Hulu, LLC* involved a patent claiming "a method for distributing copyrighted media products over the Internet where the consumer receives a copyrighted media product at no cost in exchange for viewing an advertisement, and the advertiser pays for the copyrighted content." 772 F.3d at 712. At step one of the *Alice Corp.* analysis, the court found that "[t]he process of receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad all describe an abstract idea, devoid of a concrete or tangible application." *Id.* at 715.

In *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, the Court reviewed a patent titled "Inventory Sales System and Method," claiming the following steps: "(1) receiving a product query, (2) determining the availability of products and associated options in inventory,

10

(3) preparing a list of available options, and (4) presenting the list."  21 F. Supp. 3d 758, 761, 765 (E.D. Tex. 2014).[4]  Judge Davis found that (1) the patent "involves the abstract idea of inventory-based selling," and (2) the patent's use of a "computer system with a configuration engine" did not meaningfully limit the claims as the steps "can be performed entirely by a human, mentally or with pencil and paper."  *Id.*

In *Geotab*, this Court held a different patent from the same named inventor of the '221 Patent invalid under section 101.  The patent in *Geotab* claimed a system and method similar to those claimed in the '221 Patent, but instead directed to the abstract idea of sending an address from one GPS device to another.    2016 WL 2847975, at *3 (adopting Report and Recommendation of Magistrate Judge).  This Court found that the claim at issue in *Geotab* "broadly covers four steps:  '(1) receiving a request for an address stored in a device; (2) determining an identifier (e.g., a mobile phone number) for the device in which the address is stored based upon an identifier of the first device; (3) retrieving the requested address; and (4) transmitting the address to the requestor.'"  *Geotab R&R*,  slip op. at 8-9  (quoting Defs' Mot. at 6).  This Court found that "the steps of claim 1 do nothing more than spell out what it means to apply conventional activity on a GPS device."  *Id.* at 13 (internal quotation marks and citations omitted).

The '221 Patent plows similar ground as the patents at issue in *Ultramercial*, *Clear with Computers*, and *Geotab*.  Specifically, independent claims 1 and 7 of the '221 Patent, which are representative of the claimed invention, recite the following steps (see next page):

---

[4] *Clear with Computers* was decided before *Alice Corp.* and *Ultramercial*, but anticipates the analytical framework used in both cases.

> (a)     Receiving messages from consumers requesting content;
>
> (b)     Confirming that the consumer is using a registered device;
>
> (c)     Determining whether the consumer has sent a request for delivery or storage;
>
> (d)     Determining whether the requested content is available for either delivery or storage;
>
> (e)     Checking whether there are delivery restrictions for the consumer device; and
>
> (f)     Delivering or storing the content if available.

These steps describe nothing more than the ubiquitous business practice of checking one's inventory to see if an item requested by a customer is in stock.[5]   None of the method described is unique to online media; indeed, these familiar practices are integral to every business that involves the selling of some kind of good, whether digital or physical.[6]   *See, e.g., Clear with Computers*, 21 F. Supp. 3d at 765 (concept of "selling goods from inventory" is an abstract business idea).  The generic inventory-checking process claimed by Plaintiff is at least as abstract, if not more so, than the advertising-supported media-delivery claims in *Ultramercial*,[7]

---

[5] Similarly, the dependent claims mimic commonplace and common-sense business practices like telling a customer if an item is available or the item's price.  *See* Ex. 1, '221 Patent, claims 2, 8, 12.

[6] It is not necessary at this step to determine whether the patent claims anything that departs from traditional business methods.  *See Ultramercial*, 772 F.3d at 715 ("We do not agree with Ultramercial that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete.   In any event, any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis.").

[7] The steps of the *Ultramercial* patent are: "(1) receiving copyrighted media from a content provider; (2) selecting an ad after consulting an activity log to determine whether the ad has been played less than a certain number of times; (3) offering the media for sale on the Internet; (4) restricting public access to the media; (5) offering the media to the consumer in exchange for watching the selected ad; (6) receiving a request to view the ad from the consumer; (7) facilitating display of the ad; (8) allowing the consumer access to the media; (9) allowing the consumer access to the media if the ad is interactive; (10) updating the activity log; and (11) receiving payment from the sponsor of the ad. 772 F.3d at 714-15.

the inventory-based selling claims in *Clear with Computers* (*see* 21 F. Supp. 3d at 765), and the retrieval and transmission of an address to an identifiable device in *Geotab* (*see* No. 6:15-cv-682-RWS-JDL, slip op. at 8-9).   Tellingly, the claimed invention of the '221 Patent could be performed by a video rental store clerk:

| Claim 7 Language[8] | As Performed by a Human |
|---|---|
| 7. A method for storing media content and delivering requested media content to a consumer device, the method comprising: | A clerk at a video rental store: |
| receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device; | Accepts requests from customers for videos, wherein the requests contain certain information including the title of the video, how long the customer wants to retain it, and an identifier for the customer (*e.g.*, the video rental store's membership card).[9] |
| determining whether the consumer device identifier corresponds to a registered consumer device; and | Checks the customer's membership card against a list of approved members without any late fees. |
| if it is determined that the consumer device identifier corresponds to the registered consumer device, then: <br><br> determining, whether the request message is one of a storage request message and a content request message; and | If the clerk determines that the customer is on the list of approved members, then the clerk will determine whether the customer is asking for a video that is available for rental now or to back-order a video that isn't on the shelves. |

---

[8] For simplicity, only the method claim is analyzed here, but the analysis for the corresponding system claim would yield the same result. Also, the corresponding system claim is linked to and falls with the method claim. To allow the system claim, while invalidating the method claim, would permit applicants to preempt abstract ideas by the mere use of patent-drafting conventions. *See Alice Corp.*, 134 S. Ct. at 2360 ("This Court has long warn[ed]…against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art." (alterations in original) (quoting *Mayo*, 132 S. Ct. at 1294) (internal quotation marks omitted)).

[9] For the purposes of a Section 101 inquiry (but not for infringement or other defenses), checking to see whether a consumer is using a registered device (as the claim requires) is an idea at the same level of abstraction as checking to see whether a consumer has a video membership.

| if the request message is the storage request message, then determining whether the requested media content is available for storage; and | If the customer wants to back-order a video, the clerk will check a list of videos from the company's warehouse to see if the video can be back-ordered. |
|---|---|
| if the request message is the content request message, then initiating delivery of the requested media content to the consumer device; | If the customer wants a video that is in stock, then the clerk will give the video to the customer for rental. |
| wherein the media data includes time data that indicates a length of time to store the requested media content; and | The clerk is able to receive information from customers about how long they would like the store to stock the video before returning it to the warehouse. |
| the first processor is further configured to determine whether the requested media content exists; and | The clerk checks the shelves of the store and the list of warehoused videos to see if the video rental store has the video anywhere. |
| if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device. | If the clerk sees that the video rental store has the video somewhere, the clerk will determine whether the video is available and whether there are any restrictions on the membership that would preclude the rental of the video to the customer (*e.g.*, no restricted movies for members under 17; no rentals to customers who have not paid late fees). |

That a human being can perform all of the claim limitations confirms that the '221 Patent claims are drawn to an abstract idea. *See, e.g., Clear with Computers*, 21 F. Supp. 3d at 767 ("[A] store clerk, armed with only a pencil and paper, can receive a question about men's basketball sneakers, determine the options available (color, brand, size, etc.) and the availability of those options in inventory, prepare a list of those available options, and present that list to the customer."); *OpenTV, Inc v. Apple, Inc.*, No. 14-cv-1622-HSG, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) (considering whether claims can be "performed in the human mind[] or by a human using a pen and paper" to determine whether they are directed to abstract ideas) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)).

Accordingly, the claims of the '221 Patent are directed to an abstract idea.

2.      The '221 Patent Claims Supply No Inventive Step That Would Transform Them Into Patent-Eligible Subject Matter

If the claims are directed to an abstract idea—as they are here—the Court then must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *In re TLI Commc'ns LLC Patent Litig.*, No. 2015-1372, 2016 WL 2865693, at *2 (Fed. Cir. May 17, 2016) (quoting *Mayo,* 132 S.Ct. at 1298, 1297)).

Neither representative claim 1 nor claim 7 of the '221 Patent, considering all of their elements both individually and as ordered combinations, contains an inventive concept that transforms it into a patent-eligible application.  Claim 1, for example, requires a first server, first receiver, request message, first processor, consumer device, media data, and time data.  As the specification demonstrates (Section III.B., *supra*), each of these components operate according to its expected and ordinary function.  *See id*. (relying on the specification to determine that a "telephone unit" and "server" did not add any inventive concept).  Nor is there any inventive concept presented by the ordered combination of these elements, where a server's receiver receives a message, the server's processor processes the message, and the processor performs steps based upon the message content.  This combination of steps reflects the expected and ordinary operation of a network where a consumer device communicates with a server.

The same is true with claim 7.  Each of the computerized method steps—receiving input (receiving the consumer request for media content), sorting information (determining whether the request is one for media content or media storage), checking information against a list or database (determining whether a consumer device identifier is linked to a registered consumer device), and providing output (delivering requested media content to a consumer)—describes a well-known computer function.  "These steps fall squarely within our precedent finding generic

computer components insufficient to add an inventive concept to an otherwise abstract idea." *TLI*, 2016 WL 2865693, at *6 (collecting cases); *see also Alice Corp.*, 134 S. Ct. at 2359 (using a computer to "obtain data, adjust account balances, and issue automated instructions" all involve "well-understood, routine, conventional activities previously known to the industry" (internal quotation marks and alterations omitted)); *Ultramercial*, 772 F.3d at 716 ("[R]outine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter."); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("The computer functionality is generic—indeed, quite limited: a computer receives a request for a guarantee and transmits an offer of guarantee in return."); *Content Extraction*, 776 F.3d at 1349 ("[D]etecting the presence of a particular one of said defined set of symbols on a hard copy document" merely described "generic optical character recognition technology."); *CyberSource Corp.*, 654 F.3d at 1370 (holding "mere collection and organization of data" insufficient).

Further, the ordered combination of elements in claim 7 are not transformative because their sequence—"obtaining, separating, and then sending information"—"follows from the underlying idea of categorical information storage" and delivery.  *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x 988, 993 (Fed. Cir. 2014).  Indeed, there is no other way to logically perform the invention other than in the sequence recited in its claims:  One obviously must receive a consumer request for an item before checking to see if it is available, and one must check on availability of the item before delivery.

Finally, the '221 Patent's purported limitation to "online" media places no meaningful limitation on its abstract idea.  The '221 Patent claims merely invoke the Internet and on-demand

media generally to take advantage of "[t]he widespread growth of communication networks and internet enabled consumer devices allow[ing] consumers to stream on-demand videos and music." Ex. 1, '221 Patent, 1:31-33. Any such attempt to limit the covered systems to a "particular technological environment" is insufficient to confer patentability. *Alice Corp.*, 134 S. Ct. at 2350; *Ultramercial*, 772 F.3d at 716 ("[T]he use of the Internet is not sufficient to save otherwise abstract claims from ineligibility"); *buySAFE, Inc.*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."). Moreover, the patent itself acknowledges that on-demand streaming via the Internet was widespread long before the patent. *See* Ex. 1, '221 Patent, 1:31-2:16.

Like many software patentees, Plaintiff likely will contend that its alleged invention is "necessarily rooted in computer technology" to survive the instant motion—it is not. The Federal Circuit's decision in *DDR Holdings, LLC v. Hotels.com LP*, upholding the validity of software claims under very specific circumstances is easily distinguishable from this case. *See* 773 F.3d 1245, 1257-59 (Fed. Cir. 2014) (finding claims directed to creation of a separate website with the "look and feel" of the host website to avoid losing online customers to hyperlink redirection). Unlike the claims in *DDR Holdings*, which were "necessarily rooted in computer technology in order to overcome a problem *specifically arising in the realm of computer networks*," the claims at issue here are not patent eligible because they do nothing more than claim a "computer network operating in its normal, expected manner" and reflect the "routine or conventional use of the Internet." *See DDR Holdings*, 773 F.3d at 1257-59 (emphasis added).

Moreover, the alleged problems identified in the '221 Patent—namely, difficulties in dealing with large volumes of data and adequately sharing costs of a common service among many users—are common business problems that are not unique to computer networks.  *See* Ex. 1, '221 Patent, 1:31-2:16; *see also Datatrak Int'l , Inc. v. Medidata Solutions, Inc*., No. 1:11-cv-458, slip op. at 6 (N.D Ohio, Nov. 6, 2015).  And just like the patent claims in *Ultramercial*, the '221 Patent claims address a common business problem that are not "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings*, 773 F.3d at 1257-58; *see also Geotab*, 2016 WL 2847975, at *3 ("a GPS device performing generic computer tasks does not transform the claims into patent-eligible subject matter").  Indeed, at least one court has considered and rejected a patentee's argument that a claim directed at the same kind of improvements directed to "data overload," "costs for organizing data," "data permissions," and "downstream proliferation of data," are not "necessarily rooted in computer technology." *Datatrak Int'l*, slip op. at 6 (citing *DDR Holdings*, 773 F.3d at 1257).  In short, one cannot simply take routine and conventional ideas, and patent the use of those ideas on a digital medium.

### 3. *Enfish* Confirms That The '221 Patent Claims Are Not Patent-Eligible

The Federal Circuit recently clarified that it is "relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis." *Enfish, LLC v. Microsoft Corp.*, No. 2015-1244, 2016 WL 2756255, at *4 (Fed. Cir. May 12, 2016).  *Enfish* is a very recent case illustrating an example of an invention properly directed to an improvement to computer functionality.  In *Enfish*, the Federal Circuit upheld the validity of claims directed to a "self-referential table" that the Court found was useful for making software run more effectively.  *Id.* at *3.  The Federal Circuit panel

18

in *Enfish* explained that it found patentable subject matter because the claimed invention was "directed to a specific implementation of a solution to a problem in the software arts" as opposed to "a situation where general-purpose computer components are added post-hoc to a fundamental economic practice or mathematical equation." *Id.* at *7-8 (collecting cases).

Specifically, in *Enfish*, the "self-referential table" is compared to the prior art "relational table". *Id.* at *2. "In contrast to the relational model, the patented self-referential model has two features that are not found in the relational model:  first the self-referential model can store all entity types in a single table, and second the self-referential model can define the table's columns by rows in that same table." *Id.*  The specification described the benefits of this software design as having an indexing feature that enables faster searching that would be possible using the relational design, that it has improved storage for a certain type of "unstructured data" like images, and that it has increased flexibility in configuring the database itself. *Id.* at *3.  The Federal Circuit relied on the "specification's disparagement of conventional data structures, combined with language describing the 'present invention' as including the features that make up a self-referential table [to] confirm that our characterization of the 'invention' for purposes of the § 101 analysis has not been deceived by the 'draftsman's art.'" *Id.* at *8 (contrasting *Alice Corp.,* 134 S.Ct. at 2360)).  Here, unlike in *Enfish*, the specification does not identify any specific embodiment of the "present invention," or describe a specific and beneficial software design, but rather, speaks only to generic computer components that operate as one of skill in the art would expect.

*Enfish* is consistent with the reasoning of prior Section 101 cases and does not compel a different result in this case because claims 1 and 7 of the '221 Patent are not directed to an improvement in the functioning of computer technology or software, but rather a system and

19

method for storing and delivering media content that can be carried out through the use of general purpose computing equipment.  *See, e.g.*, *TLI*, 2016 WL 2865693, at *7 (invalidating a software patent directed to classifying and storing digital photos using a general purpose computer post-*Enfish*).  Indeed, *Enfish* does not provide the sea change that software patentees hoped for—although it is one of only three decisions in thirty-four appeals—upholding software claims post-*Alice Corp*.  In fact, district courts collectively have found software patents invalid in eight out of nine challenges since *Enfish*.[10]  *Enfish* does not save Plaintiff's patent-ineligible claims.

## VI.   CONCLUSION

As shown above, the claims of the asserted '221 Patent are directed to an abstract idea, have no transformative patent-eligible application, and are not eligible for patent protection pursuant to 35 U.S.C. § 101.  Accordingly, AT&T respectfully requests that this Court dismiss Plaintiff's patent infringement complaint against AT&T with prejudice.

---

[10] *See Visual Memory LLC v. Nvidia Corp.*, No. 15-789-RGA, 2016 WL 3041847, at *8 (D. Del. May 27, 2016) (granted motion to dismiss); *Apollo Finance, LLC v. Cisco Sys., Inc.*, No. 2:15-CV-9696, 2016 WL 3234518, at *6 (C.D. Cal. June 7, 2016) (granted motion to dismiss); *Device Enhancement LLC v. Amazon.com, Inc.*, No. 15-762-SLR, 2016 WL 2899246, at *11 (D. Del. May 17, 2016) (granted motion to dismiss); *NextPoint, Inc. v. Hewlett-Packard Co.*, No. 15-cv-8550, 2016 WL 3181709, at *7-8 (N.D. Ill. June 8, 2016) (granted motion to dismiss); *Yodlee, Inc. v. Plaid Techs. Inc.*, No. 14-1445-LPS, 2016 WL 2982503, at *30 (D. Del. May 23, 2016) (granted-in-part motion to dismiss); *Pabst Licensing GmbH & Co. KG v. Xilinx Inc..*, No. 16-CV-925-LHK, 2016 WL 3196657, at *1 (N.D. Cal. June 9, 2016) (granted motion for judgment on the pleadings); *GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. 14-CV-126-PHX-JAT, 2016 WL 3165536, at *32 (D. Ariz. June 7, 2016) (granted motion for summary judgment); *Am. Well Corp. v. Teladoc, Inc.*, No. 15-cv-12274-IT, 2016 WL 3255011, at *9 (D. Mass. June 13, 2016) (granted motion to dismiss).  *But cf., JDS Techs., Inc. v. Exacq Techs.*, No. 15-10387, 2016 WL 3165724, at *7 (E.D. Mich. June 7, 2016) (denying motion to dismiss) ("The technological solution presented is inexorably tied to computer technology . . . [.]  Thus, the JDS patents are not abstract.").

Dated: July 1, 2016                    Respectfully submitted,

                                       */s/ John H. Barr, Jr.*
                                       John H. Barr, Jr.
                                       *LEAD ATTORNEY*
                                       State Bar No. 00783605
                                       Abby L. Parsons
                                       State Bar No. 24094303
                                       **KING & SPALDING, LLP**
                                       1100 Louisiana Street, Suite 4000
                                       Houston, TX 77002
                                       Tel:  (713) 276-7369
                                       Fax:  (713) 751-3290
                                       jbarr@kslaw.com
                                       aparsons@kslaw.com

                                       Allison H. Altersohn
                                       **KING & SPALDING, LLP**
                                       1185 Avenue of the Americas
                                       New York, NY  10036
                                       Tel:  (212) 556-2100
                                       Fax:  (212) 556-2222
                                       aaltersohn@kslaw.com

                                       Robert A. Jones
                                       **KING & SPALDING, LLP**
                                       1180 Peachtree Street
                                       Atlanta, GA  30309
                                       Tel:  (404) 572-3579
                                       Fax:  (404) 572-5100
                                       rajones@kslaw.com

                                       **ATTORNEYS FOR DEFENDANT
                                       AT&T SERVICES, INC.**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on July 1, 2016.

                                       */s/ John H. Barr, Jr.*
                                       John H. Barr, Jr.